Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Holly E. Smith, Esquire
CIARDI CIARDI & ASTIN
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA  19103
aciardi@ciardilaw.com
jcranston@ciardilaw.com
hsmith@ciardilaw.com
Telephone: (215) 557-3550
Facsimile: (215) 557-3551
Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : |
| | : CHAPTER 11 |
| PHILADELPHIA RITTENHOUSE DEVELOPER, L.P., | : |
| | : |
| | : BANKRUPTCY NO. 10-31201 |
| DEBTOR. | : |
| | : |

REPLY
MEMORANDUM OF LAW OF PHILADELPHIA RITTENHOUSE DEVELOPER, L.P.,
DEBTOR AND DEBTOR-IN-POSSESSION, IN SUPPORT OF ITS MOTION FOR USE
OF CASH COLLATERAL AND IN OPPOSITION TO THE MOTION OF ISTAR TARA
LLC FOR AN ORDER DISMISSING THE DEBTOR'S CASE OR, IN THE
ALTERNATIVE, TERMINATING THE AUTOMATIC STAY

Philadelphia Rittenhouse Developer, L.P. (the "Debtor"), by and through its undersigned counsel, Ciardi Ciardi & Astin, hereby submits the following Reply Memorandum of Law in Support of Debtor's Motion for Use of Cash Collateral (the "Cash Collateral Motion") and in Opposition to the Motion of iStar Tara, LLC ("iStar") for an Order Dismissing the Debtor's Case or, in the alternative, Terminating the Automatic Stay (the "Motion for Relief").

1

## PRELIMINARY STATEMENT

"Dead on Arrival", good faith, honest intentions. These phrases resound throughout both briefs filed by the parties in this matter. While over 200 combined pages of briefing would make the matter on its face seem complicated, this case really turns on those three phrases. iStar went through the transcripts meticulously and picked and parsed testimony that it felt was favorable to its positions. Not surprising, the Debtor did the same. The same issues briefed in the initial Motion for Dismissal and Response are briefed again here. The Court still has the same issue before it: iStar does not believe the Debtor can perform and, even if it could, iStar asserts that the Plan is not legally confirmable. The Debtor addressed those points in its initial Findings of Fact, Conclusions of Law and Memorandum of Law. This Reply will address factual inaccuracies from the record cited by iStar and the three points of law raised in the iStar brief not initially addressed in the Debtor's brief.

The factual inaccuracies mainly arise in the discussion of the testimony of Bazeli and Decker. Parsed from context or removed from explanation, several of the references are used to make issues where none exist or create facts out of supposition. Further, iStar seeks to establish irrelevant facts and positions to confuse the issues before the Court. One example, which will be addressed later, is iStar's continued reference to its statement that it will pay the Homeowners Association and it will pay the contractors. Empty statements. There is no written agreement, no binding promise, and any promise would have been given by the party who had the opportunity to pay the claim months prior and chose not to. But most importantly, as it relates to the Debtor's Plan, such a statement is irrelevant. In addition, iStar has a tendency to compare apples to oranges. Proposed iStar Finding of Fact 267 continues to rely upon an unproven position of iStar that only contracts signed and closed in the same year count. It then takes that

number (9) and compares it to the Debtor' proposed rate (28) of absorption. First, there is no standard for "closed and signed in same year." However, iStar takes this truncated value (prepared in one manner) and compares it to Debtor's first year proposed absorption (prepared with a completely different set of variables) to come up with an alleged 400% increase. This allegation is just bad math and further evidence of selective comparison by iStar.

The unaddressed legal issues fall into similar categories: attempts at confusion with irrelevant legal theories and misapplication of the law to the cited facts. "Plan Effective Date" value is the best example. The Debtor is not asserting an increase in value over the iStar appraisal. The Debtor is fixing the value of iStar's claim under the Plan at iStar's appraised value. iStar will receive that value plus interest. There is no increase in value. The Debtor by building and selling post-confirmation is able to generate excess proceeds from its marketing and sales experience. Those excess proceeds fund the Plan. If iStar maintains the full value of its claim, its unsecured claim will get the bulk of the excess proceeds. The second "red herring" thrown on the deck by iStar is the "revolving loan" argument. iStar's creative argument (sarcastic) here is that the loan documents do not allow for revolving credit and, therefore, it is illegal. The loan documents also had a maturity date and payment terms that were breached. The Debtor can modify these provisions so long as fair and reasonable. Fair and Equitable means the same for all creditors and applies to all portions of the loan documents. While there are citations to Pennsylvania law on conveyancing, those statutes and cases do not prohibit a bankruptcy court from modifying the loan documents.

I.    **FINDINGS OF FACT**

1. iStar Proposed Findings 105. Misstatement of the import of Decker's testimony. Looking at the same portions of the transcript, Decker indicates that the decision was made

3

before he was manager. No foundation was laid for that. On redirect he further stated that by the time he was appointed, the Debtor was out of the extension period. March 24, 2011 pgs 106-108.

2. iStar Proposed Finding of Fact 130. In footnote 5, iStar attempts to rehabilitate Tucker's testimony on why she wants a receiver. Tucker made these representations in state court, they were transcribed and available. iStar's concern was the litigation against iStar.

3. iStar Proposed Finding of Fact 175-76. iStar was not happy with its appraisal. iStar improperly attempts in these proposed Findings to avoid the valuation it provided to the Court. Apples and oranges again. The Debtor's projections for sales are not based upon the appraiser of iStar. The Debtor is not cherry picking the value. The value is the report.

4. iStar Proposed Finding of Fact 199-200 and Conclusion of Law 24. First, iStar proved nothing on the Ambrosi claim. Mr. Nelson testified the claims were valid, that checks existed and that these dollars were loaned into the Debtor. The only evidence that iStar presented was the draw request and the testimony of Tucker that she was not aware of the advances. The draw request is irrelevant to whether funds were advanced by Ambrosi or not. The only testimony regarding the purported line on the Draw Request that was to report advances came from Tucker. There was no reference to the Loan Agreement and no testimony that any other party had the same conclusion. Ambrosi has filed Proofs of Claim. They have prima facie validity until an objection is filed. At least Ambrosi has taken the step of filing claims, something iStar has failed to do.

5. iStar Proposed Finding of Fact 245-278. These Findings relate directly to the testimony of Peter Bazeli. The citations to the transcript and the portions of the report cited show a pattern of "cherry picking" and selective recall. Mr. Bazeli testified that his analysis of

absorption was ultimately based upon his judgment after collection and review of all of the data. March 31, 2011 pgs 74-78. It was based upon the demand analysis, comparables and historical data. Id. It is important to note two uncontroverted facts. First, Bazeli's analysis of absorption has been validated by the market and actual sales closing in April and May. Debtor Exhibit 31, 32. Second, Bazeli provided more support for his analysis than Pasquerella or Greenspan. Both Greenspan and Pasquerella made a statement on absorption and based it solely on historical data and their assumptions and qualifiers that were judgment based. Pasquerella extrapolated from post July sales in 2010 and Greenspan used a "sold and closed in same period" requirement. No support offered to prove either method was superior to Bazeli.

6. iStar Proposed Finding of Fact 265. This statement is simply wrong. The Debtor's Plan has 23 sales in the first twelve months. Bazeli's Report may have concluded absorption could be at 37 sales but the Debtor and Bazeli concluded that 23 sales would be used for the projections.

7. iStar Proposed Finding of Fact 267. Here, again, iStar does the apples to oranges analysis that is so prevalent throughout its brief. Proposed iStar Finding of Fact 267 continues to rely upon an unproven position of iStar that only contracts signed and closed in the same year count. It then takes that number (9) and compares it to the Debtor' proposed rate (28) of absorption. The Debtor must note that the number of 28 sales itself is wrong as iStar - 106 shows only 23 sales in the first year. There is no standard for "closed and signed in same year" as alleged by Greenspan and iStar. However, iStar takes this truncated value (prepared in one manner) and compares it to Debtor's first year proposed absorption (prepared with a completely different set of variables) to come up with an alleged 400% increase.

8. iStar Proposed Finding of Fact 277-278. The Court needs to consider how iStar can selectively use portions of its appraisal which its own witness does not consider credible. The statements by Pasquerella here are not supported any more or less than those of Bazeli on judgments made by either of them in their analysis. The statements are the judgments of an expert. The Court should consider the actual sales results as the best evidence of who made the right call.

9. iStar Proposed Finding of Fact 296. The sale proceeds of homes will be used to pay valid expenses of the Project which iStar's own witness indicated would have to be spent. Management, condo fees, insurance, real estate taxes would have to be paid by any developer including iStar. This statement is simply incorrect.

10. iStar Proposed Finding of Fact 305-312. To compare Bazeli's independence for the nominal fee his firm is earning to the $895/hour Mr. Greenspan earns is ludicrous. It would take months for Mr. Bazeli to generate the same level of fees that Mr. Greenspan generated in a few weeks.

11. iStar Proposed Finding of Fact 313. iStar completely ignores the fact that iStar has retained Bazeli for the same work he is performing for the Debtor. This section also ignores Bazeli's testimony that his work is validated by the continuing demand for his analysis from developers and investors for similar projects.

12. iStar Proposed Finding of Fact 333. The Draper and Kramer report did not criticize the Debtor's management but the management of the Condominium Association. The Debtor used the report to improve the management of the Association which was a relationship inherited when it took over the Project.

13. iStar Proposed Finding of Fact 347-349 and Conclusion of Law 51. iStar has had since September 2010, if not earlier, to pay the items referenced herein. These statements cannot be considered credible and have no binding effect. iStar could change its mind on payment if this Court grants relief and there is no document which would obligate iStar to pay those items it has refused to pay for almost one year.

II.  **ARGUMENT**

iStar's proposed Conclusion of Law 6 suggests that the Court needs to examine the honesty and integrity of DVREIF and the Debtor in the filing of the case and the prosecution of the Plan. The Debtor presented evidence that it has a confirmable Plan with a reasonable likelihood of success. Under its Plan, the Debtor provides to iStar the indubitable equivalent of its secured claim plus interest. All remaining funds are distributed in the order of priority under the Code. The Debtor presented sufficient evidence to demonstrate good faith, a confirmable plan and feasibility. The evidence presented shows that the Debtor and DVREIF hired the right people to perform the right tasks to keep the project moving forward and sell units. DVREIF put in its money when iStar stopped funding. The Plan calls for all the money to be distributed ahead of DVREIF to creditors, including iStar. Contrasted with iStar's self-serving request for a receiver and failure to pay valid draws, the Debtor is clearly acting with honesty and integrity. The Dismissal argument centers around the feasibility and confirmability of the Debtor's Plan, an argument made at length in the Memorandum filed on April 21, 2011 which will not be repeated here.

iStar spends an inordinate amount of paper and time on the pending receivership as a basis for bad faith and dismissal. A court may, in its discretion, dismiss a case where evidence establishes that the debtor filed its petition in bad faith as a litigation tactic to forestall pending

state court actions and/or remedies. See, e.g., In re Business Information Co., 81 B.R. 382 (Bankr. W.D. Pa. 1988). When a debtor is motivated by plausible, legitimate reorganization purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case. In re Clinton Centrifuge, Inc., 72 B.R. 900 (Bankr. E.D. Pa. 1987). The mere fact that a chapter 11 filing is triggered by state court proceedings adverse to the debtor does not constitute by itself, bad faith. Id. There is no dispute that the Debtor was fighting a receivership in state court. There is also no dispute that its legal claims have passed the test of dismissal in that court and are going to be tried. It is not bad faith to try and preserve the status quo from a lender's actions when you have valid claims against that lender. While iStar makes the argument that the Debtor has not established its claims against iStar, the hearings before this Court were not the time nor forum for such disputes.

In determining whether a petition for corporate reorganization is filed in good faith, it is not the duty of the court to ascertain whether or not a particular plan may be carried out but only whether it is reasonable to expect that a plan could be effected, that there is opportunity and need for reorganization, and that the petition was filed with the honest intention of effecting it and not for the purpose of hindering and delaying creditors. In re Julius Roehrs Co., 115 F.2d 723 (3d Cir. 1940). This is the "dead on arrival" standard promoted by iStar. It is well established that the Debtor's burden of proof does not rise to the level of a guarantee of success. "On the contrary… feasibility involves the question of emergence of the reorganized Debtor in a solvent condition and with reasonable prospects of financial stability and success. It is not necessary that success be guaranteed, but only that the plan presents a workable scheme of organization and operation from which there may be reasonable expectation of success." In Re Duval Manor Assoc., 191 B.R. 622, 632 (Bankr. E.D. Pa. 1996).

Courts have held that the filing of a bankruptcy petition on the eve of a scheduled foreclosure sale is not sufficient by itself to constitute bad faith to warrant dismissal or conversion of debtors' Chapter 11 case, especially where debtors have shown intent to continue operating its business as well as the capability and resources to do so. See In re Route 202 Corp., 37 B.R. 367 (Bankr. E.D. Pa. 1984). Even further, chapter 11 debtors have been found not to have filed a petition in bad faith under 11 U.S.C. § 1112, in situations when a petition was filed almost solely to frustrate creditors' efforts to execute on confessed judgment. In such cases the debtors had significant assets with which to pursue a confirmable plan and used the bankruptcy for appropriate purposes. The court held that the debtors' filing to frustrate execution efforts of one particular creditor is not an illegitimate bankruptcy purpose, as nothing in Bankruptcy Code precludes bankruptcy as an alternative for those with few or even one creditor. In re McStay, 82 B.R. 763 (Bankr. E.D. Pa. 1988).

This Court must conclude after hearing the evidence at trial that the Debtor has acted in good faith throughout and has proposed a confirmable plan. iStar raised the alleged "dead on arrival" status of any Debtor plan as its grounds for relief. The Debtor addressed each of the potential issues regarding confirmation in the prior Memorandum and incorporates those arguments here. The Debtor will only address the three confirmation issues here in response to the arguments in the iStar brief.

### a. The Claim of the Homeowners Association can be classified separately and is independent.

Class 3 is the Homeowners Association. The Class 3 claim arises from the Debtor's obligation as a developer under the Master Deed. While the Class 3 claim is unsecured, it is clearly of a different nature than the Class 5 general unsecured claims. This claim is for

9

contributions the Debtor as developer owes to the Homeowners Association for the maintenance, insurance and upkeep of the Project. The Class 5 creditors are trade creditors or general unsecured claimants with no special statutory rights like the Homeowners Association. Transcript 3/24/11 pg 36-53.

The Homeowners Association is a separate legal body owned by its members. It is a "not for profit" entity established to maintain the Condominium. Section 1129(a)(10) refers to the vote of an insider of the Debtor not being permissible. "Insider" as defined in Section 101(31)(C) and (E) is applicable to the current case. The Association clearly is not an insider under 11 U.S.C. Section 101(31)(C) as it does not fit any of those definitions. Section 101(31)(E) leaves "affiliate" as a potential insider, and it is upon this Section that iStar relies. A review of the statute and the cited case, <u>Emerson Radio</u>, indicates that the Association does not fall within the definition. Section 101(2)(B) refers to the ownership of securities or the power to vote securities of the entity. The Debtor has designates on the Board of the Association who can and will abstain from voting on the Plan. The Debtor does not and cannot own securities of the Association because there are no securities of the Association. The <u>Emerson</u> decision was based solely on the ownership of securities, not on control of the Board. 173 B.R. 490, 493 (D.N.J. 1994). The statute and the cases cited by iStar do not support its position here.[1] The Debtor has addressed the distinctness of the claim of the Association in its prior Brief.

### b. The concept of Plan Effective Date Value is (i) a confirmation issue and (ii) not relevant in this case.

iStar asserts that the Debtor's Plan must fail because it does not distribute the Plan Effective Date value to creditors. First, it has no valuation to support what it considers to be the

---

[1] The Debtor would correct the parenthetical provided by iStar. The correct reference in <u>Emerson</u> was the the debtor and affiliate do <u>not</u> own stock in one another. <u>Id.</u> at 493.

10

Plan Effective Date value or what such value is defined as comprising. The comment that Mr. Greenspan, who is not an appraiser and did not perform an appraisal, calculated a value of $185,000,000 should be given no weight. He did no valuation work or analysis. He just took the Debtor's projections, which he roundly criticized, and guestimated a number. iStar submitted an appraisal. iStar does not like the appraisal. iStar wants to use its appraisal so long as it gets iStar the property. If that appraisal won't accomplish that result, then iStar moves on to this new value. iStar again tries to compare apples to oranges. The Debtor is not alleging two different values. iStar has alleged a value of $140,200,000. The Debtor is using that value in its Plan.

The Dewsnup case offers no help to iStar Dewsnup v. Timm, 502 U.S. 410 (1992). Dewsnup addressed lien stripping in a Chapter 7. The Court in Dewsnup limited the effect of its order to the facts before it. 502 U.S. at 417. The Court further notes that its consideration was "apart from reorganization proceedings." Id. at 418. The Debtor is not seeking to obtain a windfall from the increase in value of the property during the bankruptcy. There was no evidence presented that such was the case. The Debtor has valued the Project in its Plan at the value suggested by iStar. The Debtor is essentially that "bulk buyer" referenced by Pasquerella and is giving iStar its $140,200,000 plus interest. In addition, if iStar has an unsecured claim, it will get the excess proceeds. If a higher value is established at the plan confirmation hearing, that value will need to be addressed in the Plan. There is no support for iStar's position that the Debtor cannot base its plan on the iStar appraisal.

c.  **Debtor can modify the loan documents so long as fair and equitable.**

The Debtor clearly has the ability to modify rate, term and payment to a secured creditor in a Chapter 11 Plan. iStar cannot point to any case which would prohibit the Debtor from modifying such terms. In fact, the Supreme Court has addressed the rate modification issue in

11

Till v. SCS Credit Corp., 541 U.S. 465 (2004). iStar alleges, with no support, that the Debtor's plan must fail because the Debtor is changing the loan terms to a "revolving" loan. The Debtor's Plan does not create a "revolving" loan. The Debtor's Plan uses proceeds over the iStar secured claim to fund project expenses so that all creditors have a chance of recovery. A modification of the release price is no different than an interest rate modification.

## CONCLUSION

The Debtor has addressed all of the issues raised by iStar. Anticipating most of the arguments, the Debtor's prior memorandum addressed most of these arguments. The Debtor has been proceeding with the sales and marketing of the Project. The Debtor is well ahead of its own projections and has clearly demonstrated the fallacy of the criticisms of Greenspan on absorption. The Debtor's Plan is the only mechanism by which the unsecured creditors and investors recover anything. iStar receives the full value of its secured claim based upon the appraisal it obtained. While the case is not at confirmation and there are issues which the Debtor will need to address in that process, the Debtor has proven that its Plan has more than just a

chance at confirmation. The Plan is clearly not "Dead on Arrival." The Debtor can modify iStar's loan provisions as long as such modifications are fair and equitable. The Debtor has at least one accepting class of creditors. This Plan and this Debtor should be permitted to proceed to confirmation.

Respectfully submitted,

Dated: May 6, 2011

CIARDI CIARDI & ASTIN

_____
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
Holly E. Smith, Esquire
One Commerce Square
2005 Market Street, Suite 1930
Philadelphia, PA 19103
(T) (215) 557-3550
(F) (215) 557-3551
aciardi@ciardilaw.com
jcranston@ciardilaw.com
hsmith@ciardilaw.com
Attorneys for the Debtor and
Debtor-in-Possession