## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PHILADELPHIA RITTENHOUSE | ) | Case No. 10-31201 (SR) |
| DEVELOPER, L.P. | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

### ORDER (A) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING FOR AN LIMITED PERIOD AND GRANT SECURITY INTERESTS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105 AND 364(c) AND (d)(1); (B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; (C) AUTHORIZING DEBTOR TO ENTER INTO AGREEMENTS WITH ISTAR TARA LLC; AND (D) SCHEDULING A HEARING FOR ANY SUBSEQUENT PERIOD PURSUANT TO BANKRUPTCY RULE 4001

This Order is entered upon the motion (the "Motion"), dated April 4, 2011, of Philadelphia Rittenhouse Developer, L.P. ("Debtor"), as a debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Case"), pursuant to sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, among other things:

(1)     authorization for Debtor to obtain post-petition loans, advances and other financial accommodations for a limited time period from iStar Tara LLC, ("iStar Tara," or "Lender"), pursuant to that certain Post-Petition Note and Security Agreement dated as of May 5, 2011, between Debtor and Lender (the "Post-Petition Financing Agreement"), and in accordance with this Order, secured by security interests in and liens upon all of the Collateral (as hereinafter defined), pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code;

(2)     authorization for Borrower to enter into the Post-Petition Financing Agreement (a copy a copy of which is annexed hereto as **Exhibit "A"** and is incorporated herein) (capitalized terms not otherwise defined in this Order shall have the respective meanings ascribed thereto in the Post-Petition Financing Agreement);

(3)     modification of the automatic stay to the extent hereinafter set forth;

(4)     the grant to Lender of superpriority administrative claim status pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all Post-Petition Obligations (as defined in the Post-Petition Financing Agreement); and

(5)     the setting of a subsequent Hearing on the Motion for financing for a second limited time period if extended financing is consented to by Lender.

It appearing that appropriate notice of the Motion, the relief requested therein, and the Hearings (as defined below) (the "Notice") having been served by the Debtor in accordance with Rule 4001(c) on: (i) Lender; (ii) the United States Trustee for the Eastern District of Pennsylvania (the "U.S. Trustee"); (iii) the holders of the twenty (20) largest unsecured claims against the Debtor's Estate (the "20 Largest Unsecured Creditors") which now includes the members of the unsecured creditors' committee; (iv) the Internal Revenue Service; (v) all appropriate state taxing authorities; (vi) certain other parties identified in the certificate of service filed with the Court, including without limitation, all creditors who have filed or recorded pre-petition liens or security interests against any of the Debtor's assets (collectively, the "Noticed Parties").

The initial hearings on the Motion having been held by this Court on April 7 and 28, 2011 (the "Hearings").

Upon the record made by the Debtor at the Hearings, including the Motion, and the filings and pleadings in the Case, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      Petition.  On December 30, 2011 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its businesses and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      Jurisdiction and Venue.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), and (M).  Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice.  Under the circumstances, the Notice given by the Debtor of the Motion, the Hearings and the relief granted under this Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c).

D.      Debtor's Acknowledgments and Agreements.    The Debtor admits, stipulates, acknowledges and agrees that:

(i)      Pre-Petition Loan Documents.  Prior to the commencement of the Case, Lender and its affiliate, iStar Financial, Inc. ("iStar Financial") made loans, advances and provided other credit accommodations to Debtor pursuant to:    (a) the Loan and Security Agreement, dated as of August 22, 2009, between iStar Financial and Debtor, as amended from time to time, including without limitation, that certain Third Amendment to Loan and Security Agreement and other Loan Documents, dated as of November 4, 2009 (the "Third

Amendment"), (as the same has heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, the "iStar Loan & Security Agreement"; (b) Secured Promissory Note, dated as of August 22, 2007, by Debtor in favor of iStar Financial in the original principal amount of $216,500,000 (the "iStar 2007 Promissory Note"); (c) Secured Promissory Note, dated as of November 4, 2009, by Debtor in favor of lender in the original principal amount of $34,559,320 (the "iStar 2009 Promissory Note"), and (d) all other agreements, documents and instruments executed and/or delivered with, to, or in favor of Lender, including without limitation, that certain Open-End Mortgage and Fixture Filing dated as of August 22, 2007, and recorded in the Philadelphia Department of Records on August 28, 2007, Doc ID 51761960 ("First Mortgage"), and that certain Open-End Mortgage and Fixture Filing dated as of November 4, 2009, and recorded in the Philadelphia Department of Records on November 16, 2009, Doc ID 52144473), ("Second Mortgage"), all security agreements, notes, guarantees, mortgages, Uniform Commercial Code ("UCC") financing statements and other related agreements, documents and instruments executed and/or delivered in connection therewith or related thereto (all of the foregoing, together with the iStar Loan and Security Agreement, the Third Amendment, the iStar 2007 Promissory Note, and the iStar 2009 Promissory Note, the First Mortgage, the Second Mortgage, as all of the same may have heretofore been amended, supplemented, modified, extended, renewed, restated and/or replaced at any time prior to the Petition Date, collectively, the "Pre-Petition Loan Documents").

(ii)    Pre-Petition Obligations.    Pursuant to the Pre-Petition Loan documents, Debtor borrowed funds from the Lender to finance the construction of the Debtor's 33 story luxury condominium development project known as "10 Rittenhouse Square" located in Philadelphia, Pennsylvania, adjacent to the intersection of 18th and Walnut Streets (the

"Project"). For the purposes of this Order, all loans, advances, letter of credit accommodations, debts, obligations, liabilities, indebtedness, covenants and duties of Debtor to Lender of every kind and description, however evidenced, whether direct or indirect, absolute or contingent, joint or several, secured or unsecured, due or not due, primary or secondary, liquidated or unliquidated, arising before the Petition Date and whether arising under or related to the Pre-Petition Loan Documents, by operation of law or otherwise and whether incurred by the Debtor as principal, surety, endorser, guarantor or otherwise and including, without limitation, all principal, interest, financing charges, letter of credit fees, unused line fees, servicing fees, line increase fees, early termination fees, other fees, commissions, costs, expenses and attorneys', accountants' and consultants' fees and expenses incurred in connection with any of the foregoing shall be referred to as the "Pre-Petition Obligations;"

(iii)    Pre-Petition Collateral. As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Pre-Petition Loan Documents by first priority security interests and liens granted by Debtor to Lender upon all of the Collateral (as defined in the iStar Loan and Security Agreement) existing as of the Petition Date and all issues, profits, proceeds, and products thereof (collectively, together with any other property of the Debtor's bankruptcy estate (as defined under section 541 of the Bankruptcy Code, the "Estate") in which a security interest or lien was granted to Lender prior to the Petition Date, the "Pre-Petition Collateral," as such term is more fully defined in the Agreement).

E.    Findings Regarding the Postpetition Financing.

(i)    Postpetition Financing. The Debtor has requested from Lender, and Lender is willing to extend, certain loans, advances and other financial accommodations, as

more particularly described, and on the terms and conditions set forth, in this Order and the Post-Petition Financing Agreement.

(ii)    Need for Post-Petition Financing.    The Debtor does not have sufficient available sources of working capital to operate its business in the ordinary course of its business without the financing requested under the Motion.  The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed Post-Petition Financing Agreement with Lender as set forth in this Order and the Post-Petition Financing Agreement is vital to the preservation and maintenance of the Project.  Accordingly, the Debtor has an immediate need to obtain the post-petition financing in order to permit, among other things, the orderly continuation of the operation of its businesses, to minimize the disruption of its business operations, and to manage and preserve the assets of its estate in order to maximize the recovery to all estate creditors.

(iii)    No Credit Available on More Favorable Terms.    The Debtor is unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code without the grant of liens on assets.  The Debtor has been unable to procure the necessary financing on terms more favorable than the financing offered by Lender pursuant to the Post-Petition Financing Agreement; and

(iv)    Budget.  Debtor has prepared and delivered to Lender a Budget (the "Budget," as such term is more fully defined in and attached as Exhibit B to the Post-Petition Financing Agreement).  Such Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the Proposed Budget (as defined in the Post-

Petition Financing Agreement) for the period from March 15 – April 30, 2011 covered thereby. Based upon the assumptions set forth in the Budget, the Debtor represents that the Budget is achievable and is intended to allow the Debtor to operate in Chapter 11 without the accrual of unpaid administrative expenses during the term of the Budget, however, the Budget and the Post-Petition Financing Agreement do not permit the payment of Debtor's professional fees (other than to CB Development Services, Inc.), or other expenses that do not directly enhance the maintenance and preservation of the Project with loans advanced under the Post-Petition Financing Agreement and this Order.

(v)     Business Judgment and Good Faith Pursuant to Section 364(e). The terms of the Post-Petition Financing Agreement and this Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to the Debtor, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the Post-Petition Financing Agreement and this Order have been negotiated in good faith and at arms' length by and among the Debtor and Lender, with all parties represented by counsel. Any credit extended under the terms of this Order shall be deemed to have been extended in good faith by Lender as that term is used in section 364(c) of the Bankruptcy Code.

(vi)     Good Cause. The relief requested in the Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtor, its creditors, and its Estate as its implementation will, among other things, provide the Debtor with the liquidity necessary to (a) minimize disruption to the Debtor's business and on-going operations, (b) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (c) avoid immediate and irreparable harm to the Project.

(vii)    Immediate Entry.  Sufficient cause exists for immediate entry of

this Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Case has filed or

made an objection to the relief sought in the Motion and the entry of this Order, or any

objections that were made (to the extent such objections have not been withdrawn) are hereby

overruled.

Based upon the foregoing, and after due consideration and good cause appearing

therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted.  The Motion is granted in accordance with Bankruptcy

Rule 4001(c)(2) to the extent provided in this Order.  This Order shall hereinafter be referred to

as the "Financing Order for Limited Period."

1.2    Authorization to Borrow and Use of Loan Proceeds.  Debtor is hereby

authorized and empowered to immediately borrow and obtain Loans, and to incur indebtedness

and obligations owing to Lender pursuant to the terms and conditions of this Financing Order for

Limited Period, and Post-Petition Financing Agreement, during the period (the "Limited

Financing Period") commencing on the date of this Financing Order for Limited Period through

and including the Termination Date (as defined in the Post-Petition Financing Agreement), but

only for expenses for the period of March 15 – April 30 2011 covered by the Budget, in such

amounts as may be made available to Debtor by Lender in accordance with the Budget[1] and all

of the terms and conditions set forth in the Post-Petition Financing Agreement, and this

---

[1] Notwithstanding any approval by Lender of the Budget or any subsequent or amended Budget(s), Lender will not
be required to, provide any Loans to Debtor pursuant to the Budget, or to fund any specific expenses or
disbursements set forth in the Budget, but shall only provide Loans pursuant to the terms and conditions set forth in
the Post-Petition Financing Agreement and the Financing Order.

Financing Order for Limited Period.    Subject to the terms and conditions contained in this

Financing Order for Limited Period and the Post-Petition Financing Agreement, and in

accordance with the Budget, Debtor shall use the proceeds of the Loans for the payment of the

expense items specified in the Budget.

      1.3     Post-Petition Financing Agreement.

      1.3.1    Authorization.  Debtor is hereby authorized and directed to enter

into, execute, deliver, perform, and comply with all of the terms, conditions and covenants of the

Post-Petition Financing Agreement and all other agreements, documents and instruments

executed and/or delivered in connection with or related to the Post-Petition Financing Agreement

and this Financing Order for Limited Period.

      1.3.2    Approval.  The Post-Petition Financing Agreement and each term

set forth therein are approved to the extent necessary to implement the terms and provisions of

this Financing Order for Limited Period.  All of such terms, conditions, and covenants shall be

sufficient and conclusive evidence of the borrowing arrangements by and among Debtor and

Lender, and of the Debtor's assumption and adoption of all of the terms, conditions, and

covenants of the Post-Petition Financing Agreement for all purposes, including without

limitation, to the extent applicable, the payment of the Post-Petition Obligations (as defined in

the Post-Petition Financing Agreement) arising thereunder, including without limitation, all

principal, interest, and other applicable fees and expenses.

      1.3.3    Amendment.  Subject to the terms and conditions of the Post-

Petition Financing Agreement, Debtor and Lender may amend, modify, supplement, or waive

any provision of the Post-Petition Financing Agreement (an "Amendment") without further

approval or order of the Court so long as (i) such Amendment is not material (for purposes

9

hereof, a "material" Amendment shall mean, any Amendment that operates to increase the rate of

interest other than as currently provided in the Post-Petition Financing Agreement, increase the

Commitment (as defined in the Post-Petition Financing Agreement), add specific new events of

default or enlarge the nature and extent of default remedies available to the Lender following an

event of default, or otherwise modify any terms and conditions in the Post-Petition Financing

Agreement in a manner materially less favorable to Debtor), and is undertaken in good faith by

Lender and Debtor; (ii) Debtor provides prior written notice of the Amendment (the

"Amendment Notice") to (x) the U.S. Trustee and (y) the members of and counsel employed by

the official creditors' committee appointed in the Case under section 1102 of the Bankruptcy

Code (collectively, the "Committee(s)"), or in the event no such Committee is appointed at the

time of such Amendment, the 20 Largest Unsecured Creditors; (iii) Debtor files the Amendment

Notice with the Court; and (iv) no objection to the Amendment is filed with the Court within two

(2) business days from the later of the date the Amendment Notice is served or the date the

Amendment Notice is filed with the Court in accordance with this Section.   Any material

Amendment to the Post-Petition Financing Agreement must be approved by the Court to be

effective.

Section 2.       Post-Petition Lien; Superpriority Administrative Claim Status.

        2.1      Post-Petition Lien.

        2.1.1   Post-Petition Lien Granting.   To secure the prompt payment and

performance of any and all Post-Petition Obligations of Debtor to Lender of whatever kind or

nature or description, absolute or contingent, now existing or hereafter arising, Lender shall have

and is hereby granted, effective as of the Petition Date, valid and perfected first priority security

interests and liens, superior to all other liens, claims and/or security interests that any creditor or

other claimant of the Debtor's Estate may have in and upon all of the Pre-Petition Collateral and the Post-Petition Collateral (as each term is defined in the Post-Petition Financing Agreement), except that the liens and security interests granted to Lender herein and in the Post-Petition Financing Agreement shall not be senior to the mortgage liens and security interests held by Lender in the Pre-Petition Collateral to secure the Pre-Petition Obligations. The Pre-Petition Collateral and the Post-Petition Collateral are collectively referred to herein as the "Collateral." In accordance with sections 552(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Collateral, in excess of the amount of Post-Petition Obligations secured by such Collateral after satisfaction of the Post-Petition Obligations of Debtor to Lender, shall constitute additional security for the repayment of the Pre-Petition Obligations and adequate protection for the use by Debtor to the extent of any diminution in the value of the Collateral existing on the Petition Date.

2.1.2   Lien Priority.   The post-petition liens and security interests of Lender granted under the Post-Petition Financing Agreement, and this Financing Order for Limited Period in the Collateral shall be and shall continue to be first and senior in priority to all other interests and liens of every kind, nature and description, whether created consensually, by an order of the Court or otherwise, held by or granted in favor of third parties or other persons in conjunction with sections 363, 364, and/or any other sections of the Bankruptcy Code or other applicable law.

2.1.3   Post-Petition Lien Perfection.   This Financing Order for Limited Period shall be sufficient and conclusive evidence of the priority, perfection, and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the Collateral or other act to

validate or perfect such security interest or lien, including without limitation, control agreements

with the financial institutions holding a Blocked Account or other depository account consisting

of Collateral (a "Perfection Act").  Notwithstanding the foregoing, if Lender shall, in its sole

discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, Lender

is authorized to perform such act and the Debtor is authorized and directed to perform such act to

the extent necessary or required by Lender, which act or acts shall be deemed to have been

accomplished as of the date and time of entry of this Financing Order for Limited Period

notwithstanding the date and time actually accomplished, and in such event, the subject filing or

recording office is authorized to accept, file, and/or record any document in regard to such act in

accordance with applicable law.  Lender may choose to file, record, or present a certified copy of

this Financing Order for Limited Period in the same manner as a Perfection Act, which shall be

tantamount to a Perfection Act, and, in such event, the subject filing or recording office is

authorized to accept, file, or record such certified copy of this Financing Order for Limited

Period in accordance with applicable law.  Should Lender so choose and attempt to file, record,

or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way

limit, waive, or alter the validity, enforceability, attachment, or perfection of the post-petition

liens and security interests granted herein by virtue of entry of this Financing Order for Limited

Period.

     2.2    Superpriority Administrative Expense.  For all Post-Petition Obligations

now existing or hereafter arising pursuant to this Financing Order for Limited Period, the Post-

Petition Financing Agreement or otherwise, Lender is granted an allowed superpriority

administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in

right of payment over any and all other obligations, liabilities and indebtedness of Debtor,

whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, <u>inter alia</u> sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, and/or 1114 of the Bankruptcy Code (the "Superpriority Claim").

  2.3 Section 507(b) Priority. To the extent Lender's liens on and security interests in the Collateral or any other form of adequate protection of Lender's interests is insufficient to pay indefeasibly in full the Post-Petition Obligations, Lender shall also have the priority in payment afforded by section 507(b) to the extent of any such deficiency.

Section 3. Default: Rights and Remedies; Relief from Stay.

  3.1 Events of Default. The occurrence of any of the following events shall constitute an Event of Default under this Financing Order for Limited Period:

   a. Any Debtor's failure to perform, in any respect, any of the terms, conditions or covenants or its obligations under this Financing Order for Limited Period; or

   b. A default or an "Event of Default" under the Post-Petition Financing Agreement.

  3.2 Rights and Remedies Upon Event of Default. Upon the occurrence of and during the continuance of an Event of Default, the Debtor shall be bound by all restrictions, prohibitions and other terms as provided in this Financing Order for Limited Period, the Post-Petition Financing Agreement, and Lender may elect any and all consequences of such Event of Default, and Lender shall be entitled to take any act or exercise any right or remedy (subject to section 3.4 below) as provided in this Financing Order for Limited Period and/or the Post-Petition Financing Agreement, including without limitation, declaring all Post-Petition Obligations immediately due and payable, accelerating the Obligations, ceasing to extend Loans,

13

setting off any Obligations with Collateral or proceeds in Lender's possession, and enforcing any and all rights with respect to the Collateral. Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default or an act, event, or condition that with the giving of notice or the passage of time, or both, would constitute an Event of Default.

   3.3 Expiration of Commitment. Upon the expiration of the Limited Financing Period (except if such authority shall be extended with the prior written consent of Lender, which consent shall not be implied or construed from any other action, inaction or acquiescence by Lender), unless an Event of Default set forth in section 3.2 above occurs sooner and the automatic stay has been lifted or modified pursuant to section 3.4 of this Financing Order for Limited Period, all of the Post-Petition Obligations shall immediately become due and payable and Lender, following the procedure outlined in Post-Petition Financing Agreement Section 7(b), shall be automatically and completely relieved from the effect of any stay under section 362 of the Bankruptcy Code or any other restriction on the enforcement of its liens upon and security interests in the Collateral or any other rights granted to Lender pursuant to the terms and conditions of the Post-Petition Financing Agreement or this Financing Order for Limited Period, and Lender shall be and is hereby authorized, in its sole discretion, to take any and all actions and remedies provided to it in this Financing Order for Limited Period, the Post-Petition Financing Agreement and/or applicable law which Lender may deem appropriate and to proceed against and realize upon the Collateral and any other property of the Debtor's Estate.

   3.4 Relief from Automatic Stay. The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or by law are

hereby modified and vacated without further notice, application, or order of the Court to the

extent necessary to permit Lender to perform any act authorized or permitted under or by virtue

of this Financing Order for Limited Period or the Post-Petition Financing Agreement, including

without limitation, (a) to implement the post-petition financing arrangements authorized by this

Financing Order for Limited Period and pursuant to the terms of the Post-Petition Financing

Agreement, (b) to take any act to create, validate, evidence, attach, or perfect any lien, security

interest, right or claim in the Collateral, and (c) to assess, charge, collect, advance, deduct, and

receive payments with respect to the Obligations, including without limitation, all interests, fees,

costs, expenses permitted under the Post-Petition Financing Agreement, and apply such

payments to the Obligations pursuant to the Post-Petition Financing Agreement and this

Financing Order for Limited Period.  In addition, and without limiting the foregoing, upon the

occurrence of an Event of Default and after following the procedure outlined in Post-Petition

Financing Agreement Section 7(b), and providing one (1) business day prior written notice (the

"Enforcement Notice") to counsel for the Debtor, counsel for the Committee (if appointed), the

U.S. Trustee and the Court, Lender shall be entitled to take any action and exercise all rights and

remedies provided to it by this Financing Order for Limited Period, the Post-Petition Financing

Agreement and/or applicable law as Lender may deem appropriate in its sole discretion to,

among other things, proceed against and realize upon the Post-Petition Collateral and/or any

other assets and properties of Debtor's Estate upon which Lender has been or may hereafter be

granted liens and security interests to obtain the full and indefeasible repayment of all Post-

Petition Obligations, unless otherwise directed by order of the Court.

Section 4.    Representations; Covenants: and Waivers.

4.1    Collateral Rights.    Until all of the Post-Petition Obligations shall have been indefeasibly paid and satisfied in full, no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any Collateral.

Section 5.    Other Rights and Obligations.

5.1    No Modification or Stay of this Financing Order for Limited Period. Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation, or reversal of this Financing Order for Limited Period, the Post-Petition Financing Agreement, or any term hereunder or thereunder or (ii) the dismissal or conversion of the Case (a "Subject Event"), (x) the acts taken by Lender in accordance with this Financing Order for Limited Period, and (y) the Post-Petition Obligations incurred or arising prior to Lender's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall be governed in all respects by the original provisions of this Financing Order for Limited Period, and the acts taken by Lender in accordance with this Financing Order for Limited Period, and the post-petition liens granted to Lender in the Post-Petition Collateral, and all other rights, remedies, privileges, and benefits in favor of Lender pursuant to this Financing Order for Limited Period and the Post-Petition Financing Agreement shall remain valid and in full force and effect pursuant to section 364(c) of the Bankruptcy Code.  For purposes of this Financing Order for Limited Period, the term "appeal," as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Financing Order for Limited Period by this Court or any other tribunal.

5.2    Binding Effect.

16

        5.2.1   This Financing Order for Limited Period shall be binding upon Debtor, all parties in interest in the Case, and its respective successors and assigns, including any trustee or other fiduciary appointed in the Case or any subsequently converted bankruptcy case(s) of the Debtor. This Financing Order for Limited Period shall also inure to the benefit of Lender, Debtor, and its respective successors and assigns. The provisions of this Financing Order for Limited Period and the Post-Petition Financing Agreement, Post-Petition Obligations, Superpriority Claim and any and all rights, remedies, privileges, and benefits in favor of Lender provided or acknowledged in this Financing Order for Limited Period, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Financing Order for Limited Period pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissing the Case. Any order dismissing the Case under section 1112 or otherwise shall be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim and Lender's liens on and security interests in the Collateral shall continue in full force and effect notwithstanding such dismissal until the Obligations are indefeasibly paid and satisfied in full. In the event this Court modifies any of the provisions of this Financing Order for Limited Period or the Post-Petition Financing Agreement, such modifications shall not affect the rights and priorities of Lender pursuant to this Financing Order for Limited Period with respect to the Collateral, and any portion of the Obligations which arises or is incurred or is advanced prior to such modifications), and this Financing Order for Limited Period shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

5.2.2   Nothing in this Financing Order for Limited Period shall preclude Debtor from disputing the amount of the Pre-Petition Obligations claimed by and owing to Lender or of continuing to assert claims against Lender in the Debtor State Court Action (as defined in the Post-Petition Financing Agreement).

5.3     Term; Termination.   Notwithstanding any provision of this Financing Order for Limited Period to the contrary, the term of the financing arrangements among Debtor and Lender authorized by this Financing Order for Limited Period may be terminated pursuant to the terms of the Post-Petition Financing Agreement.

5.4     Limited Effect.   Unless the Financing Order for Limited Period specifically provides otherwise, in the event of a conflict between the terms and provisions of any of the Post-Petition Financing Agreement and this Financing Order for Limited Period, the terms and provisions of this Financing Order for Limited Period shall govern, interpreted as most consistent with the terms and provisions of the Post-Petition Financing Agreement.

5.5     Objections Overruled.   All objections to the Motion are hereby overruled.

Section 6.     Subsequent Hearing and Response Date.   Any subsequent hearing for continued financing desired by the Debtor after the Limited Financing Period that may be consented to by Lender on a Motion to be filed by Debtor ~~is~~ ^WILL BE^ scheduled ~~for~~ _WHEN SUCH MOTION IS FILED,_ ~~_____, 2011, at __ .m., prevailing Eastern time, before this Court (the "Hearing for Second Limited Financing Period"),~~ The Debtor shall promptly mail copies of this Financing Order for Limited Period along with any such motion to the Noticed Parties, and to any other party that has filed a request for notices with this Court and to any Creditors' Committee after same has been appointed, or Creditors' Committee counsel, if same shall have filed a request for notice. Any party in interest objecting to the relief sought in the motion of continued financing during a Second Limited

18

Financing Period shall serve and file written objections, which objections shall be served upon

(a) counsel for the Debtor, Ciardi Ciardi & Astin; Attn: Albert A. Ciardi, III, Esquire; (b)

counsel for the Lender, Blank Rome LLP, One Logan Square, Philadelphia, PA 19103; Attn:

Thomas E. Biron, Esquire, Fax: (215) 832-5562, and (c) the U.S. Trustee; and shall be filed with

the Clerk of the United States Bankruptcy Court for the Eastern District of Pennsylvania, in each

case to allow actual receipt of the foregoing no later than _____. ~~2011, at 4:00~~ *The Date The Court shall hereafter fix.*

~~p.m., prevailing Eastern time.~~

Dated: _____5-11_____, 2011
      Philadelphia, Pennsylvania

_____
STEPHEN RASLAVICH
CHIEF UNITED STATES BANKRUPTCY JUDGE

19

# **Exhibit A**

Post-Petition Financing Agreement

## POST-PETITION NOTE AND SECURITY AGREEMENT

This POST-PETITION NOTE AND SECURITY AGREEMENT, dated as of May 5, 2011 (the "**Agreement**"), is entered into and executed by, PHILADELPHIA RITTENHOUSE DEVEOPER, L.P., a Delaware limited partnership, as debtor and debtor-in-possession ("**Debtor**") and given to iSTAR TARA LLC, a Delaware limited liability company ("**Lender**").

## BACKGROUND

A.     On December 30, 2010 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") administered under Case No. 10-31201 (the "**Bankruptcy Case**") and pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**").

B.     Lender and Lender's predecessor, iStar Financial Inc., provided construction financing to Debtor, and Debtor borrowed from Lender and from iStar Financial, for the purpose of constructing a project (hereafter, the "**Project**") adjacent to the intersection at 18th and Walnut Streets, Philadelphia, Pennsylvania, pursuant to the following lending agreements (hereafter, together with all other documents evidencing or securing the obligations of Debtor to Lender, together with all supplements, amendments, modifications, extensions, renewals and replacements thereto are hereafter called, the "**Pre-Petition Loan Documents**"):

(i)     That certain Loan and Security Agreement between the Debtor and iStar Financial dated August 22, 2007 (the "**iStar Loan and Security Agreement**");

(ii)     A Secured Promissory Note from Debtor to iStar Financial in the principal amount of $216,500,000.00 dated August 22, 2007 (the "**iStar 2007Promissory Note**");

(iii)     The Third Amendment to Loan and Security Agreement between Debtor and Lender dated November 4, 2009 (the "**Third Amendment**");

(iv)     The Secured Promissory Note from Debtor to Lender in the amount of $34,559,320.00 dated November 4, 2009 (the "**iStar 2009 Promissory Note**");

(v)     The Open-end Mortgage and Fixture Filing dated as of August 22, 2007 and recorded in the Philadelphia Department of Records on August 28, 2007, Doc. ID 51761960 (the "**First Mortgage**");

(vi)     The Open-end Mortgage and Fixture Filing dated as of November 4, 2009, and recorded in the Philadelphia Department of Records on November 16, 2009, Doc. ID 52144473 (the "**Second Mortgage**"); and

(vii)     UCC-1 Financing Statements filed in the Delaware Department of State on

August 24, 2007, Filing No. 2007 3252607, and in the Philadelphia Department of Records on August 28, 2007, Doc. ID 51761963.

C.     For the purposes of this Agreement, all loans, advances, letter of credit accommodations, debts, obligations, liabilities, indebtedness, covenants and duties of Debtor to Lender of every kind and description, however evidenced, whether direct or indirect, absolute or contingent, joint or several, secured or unsecured, due or not due, primary or secondary, liquidated or unliquidated, arising before the Petition Date and whether arising under or related to the Pre-Petition Loan Documents, by operation of law or otherwise and whether incurred by the Debtor as principal, surety, endorser, guarantor or otherwise and including, without limitation, all principal, interest, financing charges, letter of credit fees, unused line fees, servicing fees, line increase fees, early termination fees, other fees, commissions, costs, expenses and attorneys', accountants' and consultants' fees and expenses incurred in connection with any of the foregoing shall be referred to as the "**Pre-Petition Obligations;**"

D.     The Pre-Petition Obligations are secured by all "Collateral" as such term is defined in the iStar Loan and Security Agreement and all other security for the Pre-Petition Obligations as provided in the Pre-Petition Loan Documents, including the security provided for by the First Mortgage and the Second Mortgage on the Project and first priority security interests in all of the Debtor's other property (collectively, the "**Pre-Petition Collateral**"). The mortgage liens and security interests are perfected in accordance with applicable law;

E.     The Debtor has requested that the Lender provide post-petition financing to the Debtor consisting of a multiple draw term loan in an aggregate amount not to exceed $1,500,000 on a senior secured, superpriority basis, pursuant to Sections 364(c) and (d) of the Bankruptcy Code;

F.     The Bankruptcy Court has entered an order authorizing the granting of credit by Lender to Debtor pursuant to Section 364 of the Bankruptcy Code (the "**Financing Order**"), pursuant to which Lender may make post-petition loans, advances and other financial accommodations to the Debtor secured by the Pre-Petition Collateral and by a first priority lien and security interest in all property of the Debtor's estate as set forth in the Financing Order, the Pre-Petition Loan Documents and this Agreement; and

G.     Lender is willing to agree to provide such financing on a senior secured and superpriority basis, pursuant to Sections 364(c) and (d) of the Bankruptcy Code, on the terms and subject to the conditions of this Agreement.

NOW THEREFORE, with the foregoing background incorporated by reference as if set forth more fully below, intending to be legally bound hereby, the parties hereto agree as follows:

1.     **The Debtor-in-Possession Loans.**

(a)     Subject to and upon the terms and conditions set forth in this Agreement, the Lender agrees to make post-petition advances (each such advance a "**Loan**" and collectively, the "**Loans**") to the Debtor, from and after the entry of the Financing Order until the Termination Date, in an aggregate principal amount not to exceed the lesser of ONE MILLION FIVE

HUNDRED THOUSAND DOLLARS ($1,500,000) and the amount approved to be borrowed by way of Loans in the Financing Order (as the same may be adjusted pursuant to the terms of this Agreement, the "**Commitment**").

(b)    The outstanding principal balance of the Loans plus all accrued and unpaid interest, fees, costs and expenses shall be due and payable without deduction, counterclaim or offset on May 15, 2011 (as may be extended from time to time in Lender's sole and absolute discretion, the "**Termination Date**"). The actual amount due and owing from time to time hereunder shall be evidenced by Lender's records of receipts and disbursements with respect to the indebtedness, which shall be conclusive evidence of such amount, absent manifest error.

(c)    All Post-Petition Obligations (as defined in Section 3 below) shall incur interest at the rate per annum equal to 10%. In no event shall the amount of interest paid or agreed to be paid to Lender hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. All contractual rates of interest chargeable hereunder and shall continue to accrue and be paid even after default, maturity, acceleration, termination of the Agreement, judgment, bankruptcy, insolvency proceedings of any kind or the happening of any event or occurrence similar or dissimilar.

(d)    The Post-Petition Obligations may be prepaid at any time without penalty or premium upon 2 days prior written notice to Lender. Amounts repaid may <u>not</u> be reborrowed hereunder. For avoidance of doubt, this is a multi-draw term loan facility, it is not intended to, nor shall it be deemed to be, a revolving credit facility.

2.    **Borrowing Notice.**

(a)    Other than the advance Debtor hereby requests Lender to make directly to the City of Philadelphia to pay 2011 real estate taxes assessed (including additions and penalties) on unsold units at the Project, to effect a funding hereunder, at least seven (7) Business Days before requested funds are to be advanced, Debtor shall give to Lender written notice in the form of the Draw Request together with all of the items set forth on **Exhibit A** attached hereto.

(b)    Upon satisfaction of the conditions precedent set forth in Section 5, Lender shall disburse the amount of such Loan in accordance with instructions in the Debtor's Draw Request.

(c)    The Lender shall not be obligated to comply with a borrowing notice if there shall then exist an Event of Default under this Agreement or an event which with the passage of time, the giving of notice, or both, might become an Event of Default under this Agreement ("**Default**") regardless of whether the Lender has determined to exercise its remedies arising upon the occurrence of such Event of Default or Default.

3.    **Collateral.** In order to secure all existing and future liabilities and obligations of every kind

3

or nature at any time arising after the commencement of the Bankruptcy Case and owing by Debtor to Lender, including in connection with Debtor's obligation to provide adequate protection to Lender's claims and security interests and liens, the transactions contemplated by this Agreement, the administration thereof or otherwise (including without limitation, the Loans), whether joint or several, related or unrelated, primary or secondary, matured or contingent, direct or indirect, due or to become due, and whether principal, interest (including interest which may accrue as post-petition interest on the Pre-Petition Obligations or in connection with any subsequent bankruptcy or similar case or proceeding), fees, costs or expenses (including without limitation attorneys' fees), and any extensions, modifications, substitutions, increases and renewals thereof, and the payment of all reasonable amounts advanced or costs incurred by Lender, to preserve, protect and enforce its rights hereunder and/or in connection herewith (collectively, "**Post-Petition Obligations**"), Debtor hereby grants, pledges and assigns to Lender, and also confirms, reaffirms and restates the prior grant to Lender of, continuing security interests in and liens upon, and rights of setoff against, all now existing or hereafter acquired real and personal property of the Debtor's estate, wheresoever located, of any kind, nature or description, whether pursuant to this Agreement or any Financing Order or any other order entered or issued by the Bankruptcy Court (the "**Post-Petition Collateral**"), which shall include, without limitation:

     (a)    All of the Pre-Petition Collateral;

     (b)    all Accounts (as defined in the Pennsylvania Uniform Commercial Code ("UCC"));

     (c)    all General Intangibles, including without limitation, all Intellectual Property (each as defined in the UCC), but not including any claims asserted by Debtor against Lender in a lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania at Regional Real Estate Investment Corp., et al. v. iStar Tara LLC, et al. (Phila. Ct. Com. Pl.) July Term 2010 No. 01587 (the "**Debtor State Court Action**");

     (d)    all Goods, including without limitation, all Inventory and all Equipment (each as defined in the UCC);

     (e)    all real property and fixtures, including without limitation, the Project;

     (f)    all Chattel Paper, including without limitation, all tangible and electronic chattel paper (each as defined in the UCC);

     (g)    all Instruments (as defined in the UCC), including without limitation, all promissory notes;

     (h)    all Documents (as defined in the UCC);

     (i)    all Deposit Accounts (as defined in the UCC);

     (j)    all letters of credit, banker's acceptances and similar instruments and including all letter-of-credit rights;

(k)    all supporting obligations and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of the Accounts, General Intangibles, and other rights to receive payment and other collateral, including without limitation, (i) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Post-Petition Collateral, (ii) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (iii) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing, Accounts, General Intangibles, other rights to receive payments or other collateral, including returned, repossessed and reclaimed goods, and (iv) deposits by and property of account debtors or other persons securing the obligations of account debtors;

(l)    all (i) Investment Property (as defined in the UCC) (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts) and (ii) monies, credit balances, deposits and other property of the Debtor now or hereafter held or received by or in transit to Lender or its affiliates or at any other depository or other institution from or for the account of the Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(m)    all commercial tort claims, but not including any claims asserted by Debtor against Lender in the Debtor State Court Action;

(n)    all claims, rights, interests, assets and properties (recovered by or on behalf of the Debtor or any trustee of the Debtor (whether in the Chapter 11 Case or any subsequent case to which the Chapter 11 Case is converted), including, without limitation, all property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code;

(o)    all books and records related to the foregoing as well as all products and proceeds of the foregoing, in any form, including insurance proceeds and all claims against third parties for loss or damage to or destruction of or other involuntary conversion of any kind or nature of any or all of the other Collateral.

4.    **Representations, Warranties and Covenants.**    In addition to the continuing representations, warranties and covenants heretofore and hereafter made by Debtor to Lender, whether pursuant to the Pre-Petition Loan Documents or otherwise, and not in limitation thereof, the Debtor hereby represents, warrants and covenants to Lender the following (which shall survive the execution and delivery of this Agreement), the truth and accuracy of which, or compliance with, to the extent such compliance does not violate the terms and provisions of the Bankruptcy Code, shall be a continuing condition to the making of Loans by Lender:

(a)    Financing Order. A Financing Order has been duly entered, is valid, subsisting and continuing and has not been vacated, modified, reversed on appeal, or vacated or modified by any order of the Bankruptcy Court (other than as consented to by Lender) and is not subject to any pending appeal or stay. Subject to the entry by the Bankruptcy Court of the Financing

Order, no consent, approval or authorization of any person, or recording, filing, registration, notice or other similar action with or to any person, is required in order to insure the legality, validity, binding effect or enforceability of this Agreement or any other documents affiliated with the Loans as against all persons.  Subject to the requirements set forth in the Bankruptcy Code, no consent, approval or authorization of any person that has not been obtained is required for the continued conduct by the Debtor of its business as presently conducted or as presently proposed to be conducted.

(b)     <u>Bankruptcy Matters.</u>

(i)     The Debtor has served notice of the motion for approval of the Financing Order to each person identified therein as a party who is required to receive such notice.

(ii)     The Financing Order has been entered by the Bankruptcy Court, and:  (A) is in full force and effect; (B) has not been amended, supplemented, altered, stayed, vacated, rescinded, or otherwise modified without the prior written consent the Lender; and (C) if the Financing Order is the subject of a pending appeal in any respect, neither the making of the Loans nor the performance by the Debtor any of its obligations hereunder or under the Financing Order shall be the subject of a presently effective stay pending appeal.

(iii)     Subject to the entry by the Bankruptcy Court of the Financing Order: (A) the Post-Petition Obligations will constitute a claim against the Debtor's estate entitled to first priority payment as an expense of administration and enjoying the legal right to be paid in advance of and before other expense of administration claims; and (B) the liens of the Lender securing the Post-Petition Obligations are valid and perfected first priority liens with priority to any liens and security interests claimed or held by other persons.

(iv)     Debtor has not granted and shall not grant any liens on the Post-Petition Collateral in favor of any other person.

(v)     The Debtor will deliver to the Lender:

A.     concurrently with the filing thereof, copies of all pleadings, motions, applications, financial information and other papers and documents filed by the Debtor in the Bankruptcy Case, with copies of such papers and documents also provided to or served on the Lender's counsel unless already delivered or served; and

B.     not less than ten (10) Business Days prior to a hearing on any Debtor motion to reject any contract, written notice thereof which shall include the reason(s) for such rejection and a certification that such rejection could not reasonably be expected to have a Material Adverse Effect.

(c)     Budget.

(i)     The Debtor's five (5) week budget of anticipated disbursements and anticipated usage of the Loans is attached hereto as **Exhibit B**. Such budget, is referred to in this Agreement as the "**Budget**."

(ii)     No later than Monday of each week for the week ended on the previous Saturday, the Debtor shall deliver to the Lender each of the following:

A.     a variance report, in form and detail satisfactory to the Lender, comparing the actual disbursements and Loan balance for the immediately preceding four (4) week period to the anticipated disbursements and anticipated Loan balance for such period as set forth in the Budget, which shall include a discussion and analysis by management of any variances;

B.     a list of unpaid expenses incurred by the Debtor; and

C.     a proposed updated budget (each a "**Proposed Budget**"), in form and substance satisfactory to the Lender, setting forth the anticipated disbursements and anticipated Loan balance for the immediately succeeding four (4) week period, which shall be in the form of **Exhibit A**.

(d)     Use of Proceeds. All Loans provided by Lender to the Debtor pursuant to the Financing Order, this Agreement or otherwise, shall be used by the Debtor, only as may be specifically provided for in the Budget. Debtor agrees that each Loan shall be considered to be an advance by Lender intended to pay charges and costs incurred in the protection of the Project, construction, alterations, and renovations as approved by Lender, specified taxes, and to cover the cost associated with the performance of the Debtor's obligations under the First Mortgage, Second Mortgage, the Pre-Petition Loan Documents, and this Agreement. The Loans hereunder shall constitute "Secured Obligations" as defined in the First Mortgage and Second Mortgage. Unless authorized by the Bankruptcy Court and approved by Lender in writing, no portion of any administrative expense claim or other claim relating to the Chapter 11 Case (including in respect of compensation or expense reimbursement to a professional person other than CB Development Services, Inc. as Owner Representative) shall be paid with the proceeds of such Loans, other than those administrative expense claims in the Chapter 11 Case directly attributable to the post-petition operation of the Debtor's business in the ordinary course in accordance with the Budget, the Financing Order and this Agreement, and to preserve, protect and maintain the Project.

(e)     Variance Covenant.

(i)     The Debtor shall comply with the Budget. Without limiting the generality of the foregoing, the Debtor may expend the proceeds in accordance with each of the categories set forth on the Budget, up to the dollar amount set forth next to each category on the Budget (subject to a variance for any particular line item not

exceeding 5%), and only for goods and services provided between the date of this Agreement and the Termination Date (except as to employee salaries and benefits, where payment must be due during the period between the date of this Agreement and the Termination Date for a prior payroll period if in the ordinary course of business of the Debtor).

(ii)    To the extent the Debtor's use of the Loan proceeds does not consume the maximum amount provided for in a particular category listed on the Budget, Debtor shall not be entitled to use any remaining amounts in that category listed on the Budget toward expenses in any other category, unless Debtor receives specific written consent from the Lender.

(iii)    The covenants set forth in this Section 4(e) (Variance Covenant) are sometimes collectively referred to in this Agreement as the "**Variance Covenant**."

(f)    Prior to the date on which the Post-Petition Obligations have been indefeasibly paid in full in cash and the Commitment has been terminated, the Debtor shall not pay any administrative expense claims except: (i) the Post-Petition Obligations due and payable hereunder; and (ii) administrative expenses provided for in the Budget (subject to the Variance Covenant).

(g)    Notwithstanding any future written approval by Lender of the Budget or any subsequent or amended Budget(s), Lender will not, and shall not be required to, provide any Loans to Debtor pursuant to the Budget, but shall only provide Loans pursuant to the lending formula and terms and conditions set forth in this Agreement and the Financing Order. Lender is relying upon the Debtor's delivery of, and compliance with, the Budget in accordance with Section 4(c) hereof in determining to enter into the post-petition financing arrangements provided for herein.

(h)    The execution and delivery by Debtor of this Agreement and all related instruments, agreement and documents and performance of the transactions contemplated herein and therein: (i) are and will be within the powers of Debtor; (ii) have been authorized by all necessary action of the Debtor; and (iii) are not and will not be in contravention of any order of any court or other agency of government, of law or any other indenture, agreement or undertaking to which Debtor is a party or by which the property of the Debtor's estate is bound, or be in conflict with, or result in a breach of or constitute (with due notice and/or lapse of time) a default under any such indenture, agreement or undertaking or result in the imposition of any lien, charge or encumbrance of any nature on any of the properties of Debtor.

(i)    This Agreement and any other agreements, instruments or documents executed and/or delivered in connection herewith, shall be valid, binding and enforceable against Debtor as a debtor-in-possession in accordance with their respective terms.

(j)    All representations and warranties contained in this Agreement and all related

agreements, instruments and documents (including the Loan Documents) are true and correct as of the date hereof.

    (k)    Debtor covenants that it shall:

        (i)    from time to time and at all reasonable times allow Lender, by or through any of its officers, agents, attorneys, or accountants, to examine or inspect the Post-Petition Collateral and all of Debtor's books and records wherever located. Debtor shall do, obtain, make, execute and deliver all such additional and further acts, things, deeds, assurances and instruments as Lender may reasonably require to vest in and assure to Lender its rights hereunder and in or to the Post-Petition Collateral, and the proceeds thereof;

        (ii)    immediately notify Lender of any event causing a material loss or decline in value of the Post-Petition Collateral whether or not covered by insurance and the amount of such loss or depreciation;

        (iii)    not sell, transfer, convey, lease, or otherwise dispose of any of the Post-Petition Collateral, except as duly authorized by order of the Bankruptcy Court, the entry of any such order having been previously consented to in writing by the Lender;

        (iv)    not grant or suffer the imposition of any lien or encumbrance upon the Post-Petition Collateral other than the security interests granted to Lender pursuant to this Agreement or pursuant to any Order in the Bankruptcy Case providing adequate protection to Lender, and other than any mechanics' liens filed in respect of a claim that arose before the commencement of the Bankruptcy Case and which are junior in priority to the First Mortgage and the Second Mortgage and

        (v)    ensure that the liens and security interests granted hereunder to Lender are at all times first priority perfected liens on and security interests in the Post-Petition Collateral.

5.    **Conditions Precedent to Loans.**  The following are conditions precedent to Lender's obligation to extend Loans or other financial accommodations to the Debtor under this Agreement:

    (a)    Debtor shall furnish to Lender all financial information, projections, budgets, business plans, cash flows and such other information, including the Budget, as Lender shall reasonably request from time to time;

    (b)    no trustee or examiner with expanded powers shall have been appointed in the Bankruptcy Case, no order directing the appointment of a trustee or examiner shall have been entered in the Bankruptcy Case, and no receiver or the like shall have been appointed or designated with respect to the Debtor, or its business, properties and assets and no motion or proceeding shall be filed and remain pending seeking such relief;

(c)    the execution and delivery of this Agreement and all other agreements, instruments, and documents to be delivered in connection herewith by Debtor ("**Post-Petition Loan Documents**"), and all such *Post-Petition Loan Documents* shall be in form and substance satisfactory to Lender;

(d)    the execution and/or delivery to Lender of all other agreements, documents and instruments which, in the good faith judgment of Lender, are necessary or appropriate.

(e)    satisfactory review by counsel for Lender of legal issues attendant to the post-petition financing transactions contemplated hereunder;

(f)    the Debtor shall comply in full with the notice and other requirements of the Bankruptcy Code and the applicable Bankruptcy Rules with respect to any applicable Financing Order in a manner acceptable to Lender and its counsel, and the Financing Order shall have been entered by the Bankruptcy Court authorizing the secured financing under this Agreement, on the terms and conditions set forth in this Agreement, and inter alia, modifying the automatic stay, authorizing and granting the senior security interest and liens in favor of Lender described in this Agreement and in the Financing Order, and granting super-priority expense of administration claims to Lender with respect to all Post-Petition Obligations due Lender hereunder. The Financing Order shall authorize post-petition financing under the terms set forth in this Agreement in an amount acceptable to Lender, in its sole discretion, and it shall contain such other terms or provisions as Lender and its counsel shall require. Lender shall not provide any Loans (or other financial accommodations) other than those authorized under the Financing Order unless there shall be no appeal or other contest with respect to the Financing Order and the time to appeal to contest such order shall have expired; and

(g)    other than the voluntary commencement of the Chapter 11 Case, no material impairment of the priority of Lender's security interests in the Pre-Petition Collateral shall have occurred.

6.    **Default.**  Each of the following events shall constitute an event of default ("**Event of Default**"):

(a)    Payments - if Debtor fails to make any payment of principal or interest in full in cash on the date when such payment is due and payable hereunder; or

(b)    Other Charges - if Debtor fails to pay any other charges, fees, costs or expenses or other monetary obligations owing to Lender, arising out of or incurred in connection with this Agreement on the date when such payment is due and payable, whether upon maturity, acceleration, demand or otherwise and such failure continues for a period of five (5) days after the earlier of Debtor becoming aware of such failure or Debtor receiving written notice of such failure; or

(c)    Particular Covenant Defaults - if Debtor fails to perform, comply with or observe any

covenant or undertaking contained in this Agreement or any other document, instrument or agreement executed or delivered in connection herewith; or

(d)     <u>Financial Information</u> - if any statement, report, financial statement, or certificate made or delivered by Debtor or any of its officers, employees or agents, to Lender is not true and correct, in all respects, when made; or

(e)     <u>Uninsured Loss</u> - if there shall occur any uninsured damage to or loss, theft, or destruction in excess of [$50,000] with respect to any portion of Debtor's property; or

(f)     <u>Warranties or Representations</u> - if any warranty, representation or other statement by or on behalf of Debtor, contained in or pursuant to this Agreement or in any loan document, is false, erroneous, or misleading in any material respect when made; or

(g)     <u>Agreements with Others</u> - if Debtor shall default (other than as a result of the filing of the Bankruptcy Case) beyond any grace period under any agreement with any person holding an expense of administration claim and: (i) such default consists of the failure to pay any principal, premium or interest with respect to such indebtedness; or (ii) such default consists of the failure to perform any covenant or agreement with respect to such indebtedness, if the effect of such default is to cause or permit Debtor's obligations which are the subject thereof to become due prior to its maturity date or prior to its regularly scheduled date of payment; or

(h)     <u>Material Adverse Events</u> - a material adverse change occurs in the business, prospects, operations, results of operations, assets, liabilities or condition (financial or otherwise) of Debtor, other than as a result of the filing of the Bankruptcy Case; or

(i)     <u>Financing Order</u> - the Financing Order, or any other order with respect to the Bankruptcy Case affecting in any material respect this Agreement shall cease to be in full force and effect, or the Bankruptcy Court shall enter any order amending, supplementing, altering, staying, vacating, rescinding or otherwise modifying the Financing Order, or any such other order without the prior written consent of the Lender; or

(j)     <u>Change in Proceedings</u> - the Bankruptcy Court shall enter any order: (i) appointing a Chapter 11 trustee or an examiner with enlarged powers relating to the operation of the business (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) under Section 1106(b) of the Bankruptcy Code in the Bankruptcy Case; (ii) appointing a fiduciary or representative of the estate with decision-making or other management authority over some or all of the Debtor's management; (iii) dismissing the Bankruptcy Case or converting the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code; (iv) granting relief from the automatic stay to any creditor, including the Lender; or (v) ordering the substantive consolidation of the assets and liabilities of the Debtor's estate with the assets and liabilities of any other person; or

(k)     <u>Superpriority Interest</u> - the Debtor shall, directly or indirectly, seek, consent or suffer to exist: (i) a priority claim for any administrative expense or unsecured claim (now existing

11

or hereafter arising of any kind or nature whatsoever, including any administrative expenses of the kind specified in the Bankruptcy Code, including Sections 105(a), 326, 328, 330, 331, 364(c)(1), 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code) equal or superior to the superpriority claim of the Lender in respect of the Post-Petition Obligations; or (ii) any lien on any Post-Petition Collateral, having a priority equal or superior to the lien in favor of the Lender securing the Post-Petition Obligations; or

(l)       <u>Termination Date</u> - the occurrence of the Termination Date; or

(m)       <u>Failure to Comply with Bankruptcy Court Orders</u> - the Debtor shall fail to comply with any order with respect to the Bankruptcy Case affecting in any material respect this Agreement; or

(n)       <u>Chapter 11 Plan</u> - the filing of a Chapter 11 Plan by any person other than the Debtor or the Lender; or

(o)       <u>Action without Lender's Consent</u> - the Debtor shall file a motion in the Bankruptcy Case: (i) to sell any of its assets without Lender's prior written consent; (ii) to recover from any portions of the Post-Petition Collateral any costs or expenses of preserving or disposing of such Post-Petition Collateral under Section 506(c) of the Bankruptcy Code, or to cut off rights in the Post-Petition Collateral; (iii) to obtain additional financing under Sections 364(c) or (d) of the Bankruptcy Code not otherwise permitted under this Agreement; or (iv) to take any other action or actions adverse to the Lender or its rights and remedies hereunder or under the Financing Order, or the Lender's interest in any of the Post-Petition Collateral; or

(p)       <u>Enforceability of Post-Petition Loan Documents</u> - (i) any part of this Agreement or any document executed in connection herewith for any reason ceases to be in full force and effect or is declared to be null and void by a court of competent jurisdiction; (ii) the Debtor or any other person engages in or supports any challenge to the validity, perfection, priority, extent or enforceability of this Agreement or any other document executed in connection herewith or the liens securing the Post-Petition Obligations, including without limitation seeking to equitably subordinate or avoid the Liens securing the Post-Petition Obligations; or (iii) the Debtor or any other person engages in or supports any investigation or asserts any claims or causes of action (or directly or indirectly support assertion of the same) against the Lender with respect to the transactions contemplated by this Agreement; or

(q)       <u>Failure to Consent</u> - any application for any of the orders described above shall be made and, if made by a person other than the Debtor, such application is not contested by the Debtor in good faith; or

(r)       . <u>Omitted</u>.

7.       **Remedies.**

12

(a)    Upon the occurrence of an Event of Default and at any time thereafter, Lender may declare all Post-Petition Obligations secured hereby immediately due and payable, all without demand, notice, presentment or protest or further action of any kind (it also being understood that the occurrence of any of the events or conditions set forth in sections 6(h), 6(i), 6(j), 6(k), 6(j), 6(l), 6(m), 6(n), 6(o), 6(p), 6(q) or 6(r) hereof shall automatically cause an immediate acceleration of the Obligations), and Lender shall have, in addition to any remedies provided herein or by any applicable law, all of the rights and remedies of a Lender under the UCC.    All rights and remedies granted Lender hereunder and under any agreements, instruments or documents executed and/or delivered in connection with the Post-Petition Loan Documents, or otherwise available at law or in equity, shall be deemed concurrent and cumulative, and not alternative remedies, and Lender may proceed with any number of remedies at the same time until all Post-Petition Obligations are satisfied in full. The exercise of any one right or remedy shall not be deemed a waiver or release of any other right or remedy, and Lender, upon or at any time after the occurrence of an Event of Default, may proceed against Debtor, at any time, under any agreement, with any available remedy and in any order.

(b)    In the event of acceleration of the obligations hereunder, all principal and interest, premium, fees, and other amounts shall thereupon become and be immediately due and payable, without presentation, demand, protest, notice of protest or other notice of dishonor of any kind, all of which are hereby expressly waived by the Debtor; and the Lender may proceed to protect and enforce its rights under this Agreement and the Financing Order in any manner or order it deems expedient without regard to any equitable principles of marshalling or otherwise; provided however, prior to foreclosing on the Post-Petition Collateral or otherwise exercising remedies against the Post-Petition Collateral, the Lender shall provide three (3) business days' prior written notice to the Debtor, the United States Trustee and counsel for any official committee of unsecured creditors (if appointed).   Notwithstanding the foregoing, during such three (3) business day-period, if the Debtor can cure the Event of Default (to the extent curable), the Lender shall not accelerate during such three (3) business day-period (at which point the Lender shall be entitled to accelerate without further notice or order of the Bankruptcy Court), and the Debtor, the United States Trustee or the creditors' committee (if appointed) may seek an emergency hearing before the Bankruptcy Court for the sole purpose of determining whether an Event of Default has occurred.   Unless during such three (3) business day-period the Bankruptcy Court determines that an Event of Default has not occurred, upon the expiration of such three (3) business day-period the Lender shall have relief from the automatic stay without further notice or order and may foreclose on all or any portion of the Post-Petition Collateral or otherwise exercise remedies against the Post-Petition Collateral permitted under the this Agreement, the Financing Order and applicable nonbankruptcy law, including the exercise of rights of setoff.

(c)    In addition to all other rights hereunder or under applicable bankruptcy and non-bankruptcy law, the Lender shall have the right to institute proceedings in equity or other appropriate proceedings for the specific performance of any covenant or agreement made in this Agreement or the Financing Order or for an injunction against the violation or threatened violation of any of the terms of this Agreement or the Financing Order or in aid of the

13

exercise of any power granted in this Agreement or the Financing Order or by law or otherwise. Further, the Lender may seek the appointment of a trustee or receiver for all or any part of the businesses of the Debtor, which trustee or receiver shall have such powers as may be conferred by the appointing authority. All rights and remedies given by this Agreement and the Financing Orders are cumulative and not exclusive of any of such rights or remedies or of any other rights or remedies available to the Lender and no course of dealing between the Debtor and the Lender or any delay or omission in exercising any right or remedy shall operate as a waiver of any right or remedy, and every right and remedy may be exercised from time to time and as often as shall be deemed appropriate by the Lender.

8. **Claims.**

(a) **Superpriority Claims and Collateral Security**. The Debtor hereby represents, warrants and covenants that, upon the entry by the Bankruptcy Court of the Financing Order, all of the Post-Petition Obligations:

(i) shall at all times constitute a superpriority expense of administration claim having priority, pursuant to Section 364(c)(1) of the Bankruptcy Code, over any claims of any person, whether now existing or hereafter arising, including any claims under Sections 105(a), 326, 328, 330, 331, 364(c)(1), 503(b), 506(c), 507, 546(c), 726 and 1114 of the Bankruptcy Code, except that the Post-Petition Obligations shall not have priority pursuant to Section 364(c)(1) of the Bankruptcy Code, over the Lender's mortgage liens and security interests in and to the Pre-Petition Collateral; and

(ii) pursuant to Section 364(c) and Section 364(d) of the Bankruptcy Code, this Agreement and the Financing Order, shall at all times be secured by first priority perfected liens in all assets of the Debtor's estate (including all avoidance actions), whether now owned or hereafter acquired, except that liens granted to Lender hereunder shall not be senior to Lender's mortgage liens and security interests in, on and to the Pre-Petition Collateral securing the Pre-Petition Obligations.

(b) The agreement of the Lender to provide post-petition financing to the Debtor will not prohibit the Lender, in its capacity as a post-petition lender and a pre-petition lender, from moving in the Bankruptcy Court for any other and further relief which the Lender believes in good faith to be necessary to protect its rights with respect to the Pre-Petition Collateral, the Post-Petition Collateral or otherwise.

9.    **No Filings Required.** The liens securing the Post-Petition Obligations shall be deemed valid and perfected and duly recorded by entry of the Financing Order . The Lender shall not be required to file any financing statements, mortgages, notices of Lien or similar instruments in any jurisdiction or filing office or to take any other action in order to validate or perfect the lien granted by or pursuant to the Financing Order or this Agreement, including obtaining control of deposit accounts, investment property or other Collateral.

10.    **Grants, Rights and Remedies.** The liens and administrative priority granted by or pursuant to the Financing Order, this Agreement or any other Post-Petition Loan Document are independently granted. The Financing Order, this Agreement and other Post-Petition Loan Documents supplement each other, and the grants, priorities, rights and remedies of the Lender hereunder are cumulative.

11.    **No Discharge; Survival of Claims.** The Debtor agrees that (a) the Post-Petition Obligations shall not be discharged by the entry of an order confirming a plan under Chapter 11 (and the Debtor pursuant to Section 1141(d)(4) of the Bankruptcy Code, hereby waives any such discharge), (b) the superpriority claim granted to the Lender, pursuant to the Financing Order and the liens granted to the Lender pursuant to the Financing Order shall not be affected in any manner by the entry of an order confirming a plan under Chapter 11; and (c) no plan shall be confirmed if it does not satisfy the foregoing requirement.

12.    **Survival.** The liens, lien priority, administrative priorities and other rights and remedies granted to the Lender pursuant to the Financing Order and this Agreement (specifically including the existence, perfection and priority of the liens provided herein and therein, and the administrative priority provided herein and therein) shall not be modified, altered or impaired in any manner by any other financing or extension of credit or incurrence of Indebtedness by the Debtor (pursuant to Section 364 of the Bankruptcy Code or otherwise), or by any dismissal or conversion of any the Bankruptcy Case, or by any other act or omission whatever. Without limitation, notwithstanding any such order, financing, extension, incurrence, dismissal, conversion, act or omission:

(a)    no costs or expenses of administration which have been or may be incurred in the Bankruptcy Case or any conversion of the same or in any other proceedings related thereto, and no priority claims, including claims and charges under Section 506(c) of the Bankruptcy Code, are or will be prior to or on a parity with any claim of the Lender against the Debtor in respect of any Post-Petition Obligation;

(b)    the liens securing the Post-Petition Obligations shall constitute valid and perfected liens and shall be prior to all other liens, now existing or hereafter arising, in favor of any other creditor or any other person whatsoever; and

(c)    the liens in securing the Post-Petition Obligations shall continue to be valid and perfected without the necessity that the lender file financing statements, mortgages or otherwise perfect its lien under applicable non-bankruptcy law.

13.    **Prohibition on Surcharge; etc.** Upon entry by the Bankruptcy Court of a Financing Order, no person will be permitted to surcharge the Post-Petition Collateral under Section 506(c) of the

Bankruptcy Code, and no costs or expenses whatsoever shall be imposed against the Post-Petition Collateral. The prohibition on surcharging, subordinating or priming the liens of other entities to the liens of the Lender on the Post-Petition Collateral will survive the termination of this Agreement and the dismissal of the Bankruptcy Case, such that no person will be permitted to obtain a lien or rights (through any means, at law or in equity) which in any case is equal or senior to the liens of the Lender on the Post-Petition Collateral. Upon the termination of this Agreement and the dismissal of the Bankruptcy Case, the Bankruptcy Court will retain jurisdiction over the Post-Petition Collateral for the limited purpose of enforcing this Section.

14.    **Miscellaneous.**

(a)    The provisions of this Agreement and other agreements and documents referred to herein are to be deemed severable, and the invalidity or unenforceability of any provision shall not affect or impair the remaining provisions which shall continue in full force and effect. All covenants of Debtor hereunder, under the Financing Order, or under any related agreement, instrument or document, shall be deemed continuing until all of the Post-Petition Obligations are paid in full.

(b)    This Agreement together with any documents referenced herein constitute the entire understanding of the parties hereto regarding the subject matter hereof, and no amendment to, or modification of, this Agreement shall be binding unless in writing and signed by Debtor and Lender.

(c)    All provisions herein shall inure to, become binding upon the successors, representatives, trustees, administrators, executors, heirs and assigns of the parties hereto, except that the Debtor shall not assign its obligations or rights hereunder without the prior written consent of Lender.

(d)    **LENDER AND DEBTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A JURY TRIAL IN ANY AND ALL DISPUTES BETWEEN LENDER AND DEBTOR HEREUNDER.**

(e)    Any notice, request, demand, waiver, consent, approval or other communication which is required or permitted hereunder shall be in writing and shall be deemed given only if delivered personally or sent by registered or certified mail or by nationally recognized overnight courier service, postage prepaid, or by facsimile, with written confirmation to follow, in accordance with the notice provisions under the Pre-Petition Loan Documents, with copies to:

    If to Lender:              Cynthia Tucker
                               iStar Financial, Inc.
                               180 Glastonbury Boulevard
                               Glastonbury CT 06033
                               Fax:  (860) 815-5901

16

Nina Matis Esquire
iStar Financial, Inc.
1114 Avenue of the Americas
New York NY 10036
Fax: (212) 930-9494

Blank Rome LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Attn: Thomas E. Biron, Esq.
Fax: (215) 832-5562

If to Debtor:           Ciardi, Ciardi & Astin
                        One Commerce Square
                        2005 Market Street, Suite 1930
                        Philadelphia, PA 19103
                        Attn: Albert A. Ciardi III, Esq.
                        Fax: (215) 557-3551

and all such other address as the addressee may have specified in a notice duly given to the sender as provided herein. Such notice, request, demand, waiver, consent, approval or other communication will be deemed to have been given as of the date so delivered.

(f)     No rights are intended to be created hereunder, or under any related agreements or documents for the benefit of any third party donee, creditor or incidental beneficiary of Debtor. Nothing contained in this Agreement shall be construed as a delegation to Lender of Debtor's duty of performance, including, without limitation, Debtor's duties under any account or contract with any other person.

(g)     Signature by PDF and facsimile shall bind the parties hereto.

[Remainder of Page Intentionally Left Blank]
[Signatures to Follow]

17

Dated as of the date and year first set forth above.

**DEBTOR:**

**PHILADELPHIA RITTENHOUSE DEVELOPER, L.P.**

By:_____
Name:_____
Title:_____

**LENDER:**

**iSTAR TARA, LLC**

By:_____
Name:_____
Title:_____

**[SIGNATURE PAGE 1 OF 1 TO DEBTOR IN
POSSESSION NOTE AND SECURITY AGREEMENT]**

## EXHIBIT A

1.     A certification that the conditions precedent set forth in Section 5 of the
Agreement have been satisfied and that the proceeds of Loan(s) being requested shall be used in
accordance with the Budget (as defined in Section 4 of the Agreement).

2.     Two complete packages to iStar and, unless noted otherwise (UNO), identical
package to Lender's Consultant (LC).  The necessary distribution addresses will be provided:

### Periodic Disbursement Package

iStar's Borrower's Sworn Statement (BSS), certified and notarized, including:

- iStar's BSS Requested Disbursement Summary & Current Budget
- iStar's BSS Disbursement Requests Worksheet
- Unless previously provided, copies of all Executed and/or Pending
  Contracts with Vendors and other contractors whose invoices are included
  in the draw request
- Copies of any Invoices evidencing or creating all Soft Costs
- Contractor Applications for Payment (see below for details)
- Reconciliation of prior payments funded vs. what was actually paid
- List of past due payables over 30 days

3.     To the extent not included in number 2, copies of all bills and invoices to be paid,
wiring instructions or payee address to direct payment if payment is to be by check, and, if not
already provided, IRS Form W-9 for each vendor/contractor.

4.     If hard costs are being requisitioned, Lender shall have received a consultant's
draw inspection and report for such Advance or performed its own inspection and approved the
results of such inspection.

### HARD COSTS:Submissions to iStar and Lender's Consultant, as received by Debtor

- Meeting Minutes (Owner/Architect/Contractor [OAC], pencil draw,
  conflict resolution, etc.)
- Correspondence between Debtor & Contractor related to Budget,
  Schedule, Liens, Claims, etc.
- Architect's and/or Engineer's Field Reports
- Permits issued since prior month, whether to Debtor or Contractor
- Insurance Certificates (with iStar & Debtor as additional insured, except
  Professional Liability certificates.  Refer to specific insurance
  requirements in Pre-Petition Loan Documents) (UNO)
- Narrative Project Status memo by Debtor addressing the following points:
  o    Executive Summary
  o    Major Current Issues
  o    Project Budget, Contingency Status

1

- o    Project Schedule and Construction Status
- o    Marketing, Sales and/or Leasing Status
- o    Design Status and/or changes, enhancements, etc; Municipal and/or Neighborhood issues
- Cover page, altered and signature pages of all Executed Subcontracts to iStar, complete Subcontracts to LC
- Payment & Performance Bonds (with iStar & Debtor as multiple obligees)

**Contractor Applications for Payment***

- iStar Modified AIA G702 forms certified and notarized
- iStar Modified AIA G703 form
- All Subcontractor, suppliers and materialmen pay applications and/or invoices substantiating individual lines of the Schedule of Values with payment requested
- Lien Waivers for Contractor, and all Subcontractors, suppliers and materialmen who have and/or are requesting payment.
- Contractor's Contingency Transfer Log (iStar interactive form)
- Contractor's Stored Materials Log (iStar interactive form) and for each item newly listed for payment, the following are required:
  - o    Bailee's Letter (as attached to Loan Agreement as Exhibit)
  - o    Verification of inventory and digital color pictures taken at storage facility by Design Professional (DP) who will or has reviewed shop drawings and/or submittals for materials
  - o    Pay Application or invoice from Subcontractor, certified by verifying DP
  - o    Certificate of Insurance from Subcontractor or Warehouse, acknowledging the stored materials for the named and addressed project site, and naming iStar and Debtor as Loss Payees
  - o    Detailed Bill of Sale
- Bond & Insurance Log (on iStar interactive form)
- Change Order (CO) Log
- CO's (executed cover sheet only for iStar, full CO with all back-up for IC)
- Pending CO Log, Construction Change Directive (CCD) Log and/or Cost Issue Log
- Request for Information (RFI) Log
- Drawing and/or Specification Changes Log
- Shop Drawing & Submittal Log
- Permits &/or Development Authority Approvals, Municipal &/or Threshold Inspections Logs, etc.
- Updated Construction Schedule (CPM)
- Project Team Directory including all subs, consultants, etc.
- Narrative Project Status memo by Contractor addressing the following points:
  - o    Executive Summary

      o     Major Issues &/or Pending Discussions (claims)
      o     All correspondence between Debtor and Contractor related to Major Issues
      o     Activity by Subs
      o     One-Month Look Ahead

5.     Color Progress Photos, including digital copy sent via email to project team including all Lender draw recipients.

6.     Permit Inspection Card for the Renovations, or the local equivalent thereof, from the applicable Governmental Agency, showing all signatures thereon.

7.     Information regarding casualty losses and other losses, including copies of claims to insurance carriers, responses and correspondence.

8.     Information and correspondence regarding construction or other defects or claims of defects or damages that give rise to warranty or other claims.

9.     Such other information and attachments called for by the Draw Request form or requested by Lender.

# EXHIBIT B

# BUDGET

March 15 - April 30, 2011 Estimated Expenditures

**Operating Expenses:**

| | | |
|---|---|---:|
| Construction Costs | $ | 170,500 |
| HOA-Camco | $ | 444,323 |
| Insurance | $ | 2,069 |
| Payroll & Benefits | $ | 29,971 |
| Office Expense | $ | 10,190 |
| Marketing | $ | 79,535 |
| Legal | $ | - |
| Accounting | $ | - |
| Management | $ | 27,000 |
| Trustee Program | $ | 1,000 |
| **Total operating expenses** | $ | 764,588 |

| Mar 15-Apr 30 Details: | Amount | Vendor | Other Comments |
|---|---|---|---|
| **Legal-Operations** | $ - | Ballard Sphar | |
| **Accounting** | $ - | Miller Coffey Tate | |
| **Management** | $ 27,000 | Dequity | |
| **Trustee Program Fee** | $ 1,000 | US Trustee | |
| **Insurance** | $ 2,069 | Afco | |
| | | | |
| **Office Expense** | $ 10,190 | | |
| KDI-Lease | $ 840 | KDI-Lease | |
| Cannon-Lease | $ 860 | Cannon-Lease | |
| KDI-copies/supplies | $ 600 | KDI-copies/supplies | |
| NetData-IT support | $ 500 | NetData-IT support | |
| Verizon | $ 140 | Verizon | |
| Patec | $ 2,200 | Patec | |
| Fedex | $ 450 | Fedex | |
| W B Mason-supplies | $ 500 | W B Mason-supplies | |
| Comcast | $ 250 | Comcast | |
| Pitney Bowes-Postage | $ 350 | Pitney Bowes-Postage | |
| Printing | $ 1,000 | TBD | |
| Miscellaneous | $ 2,500 | TBD | |
| | | | |
| **HOA-Camco** | $ 444,323 | See Detailed Schedule | |
| | | | |
| **Payroll & Benefits** | $ 29,971 | | |
| Payroll Gross (base) | $ 17,735 | Employees | |
| Payroll Sales Bonus | $ 3,750 | Employees | Bonus based on signed agreement |
| Payroll Taxes | $ 1,896 | Tax Autnorities | |
| Payroll Processing | $ 285 | ADP | |
| Reimbursable Expenses | $ 1,500 | Employees | |
| Workers Comp Ins | $ 1,930 | Willis Insurance | |
| Health Insurance | $ 2,875 | Aetna | |
| | | | |
| **Construction Costs** | $ 170,500 | | |

| | | | |
|---|---|---|---|
| Serafina CO's | $ | | |
| PL items sold units | 81,900 | Bannet Group | Subject to approval/review of PRD and iStar |
| Unsold unit cleaning/maint | 15,000 | TBD | 3 closing @$5k each |
| Other estimated cost | 2,400 | TBD | 3 closing @$800 each |
| CCI | 5,000 | Construction Consultants | |
| CBD | 32,000 | CB Development | |
| Trash removal | 4,200 | Advance Disposal/CMS | |
| Carry cost/warranty | 30,000 | TBD | |
| | | | |
| **Marketing** | $ 79,535 | | |
| MOD WORLDWIDE - Creative Fees | $1,500 | MOD WORLDWIDE | |
| PACE ADVERTISING - Media Buying | $635 | PACE ADVERTISING | 17.65% Commission |
| PHOTOGRAPHY | $3,000 | TBD | Professional Photographer Day Rate |
| PHILADELPHIA INQUIRER | $2,000 | PHILADELPHIA INQUIRER | Anticipated promotional rate on special ad feature |
| MAIN LINE MEDIA - Insertion Fees | $1,000 | MAIN LINE MEDIA | $53 per $1,000 |
| MAIN LINE MEDIA - Insert Printing | $2,800 | MAIN LINE MEDIA | |
| DIRECT MAIL - Production | $1,000 | TBD | Design fees for Direct Mail |
| DIRECT MAIL - Printing | $5,000 | TBD | 5,000 Pieces |
| DIRECT MAIL - Fulfillment | $3,750 | TBD | $0.75 Each |
| COLLATERAL - Business Cards | $750 | TBD | Business Cards for Site Staff - Running Out |
| LEGAL INTELLIGENCER | $2,600 | LEGAL INTELLIGENCER | |
| MISCELLANEOUS | $500 | TBD | |
| | | | |
| *PUBLIC RELATIONS AND EVENTS* | | | |
| MAVEN AGENCY - Fees | $7,750 | Maven | |
| INVITATION ONLY OPEN HOUSES | $10,000 | TBD | Anticipated two to three open houses with catering, etc. |
| OPEN HOUSE INVITATIONS - Printing | $2,500 | TBD | 3,000 Invitation |
| OPEN HOUSE INVITATIONS - Fulfillment | $2,250 | TBD | $0.75 Each |
| EVENTS - Other | $2,500 | TBD | Musicians, Attendance Overages, Miscellaneous |
| | | | |
| *Marketing and Sales Advisor* | $30,000 | Weitzman Group | |

## CAMCO/HOA

**10 Ritt Payroll & Benefits:**

| | | | |
|---|---|--:|---|
| 10 Ritt Staff | $ | 25,000 | 25-Mar |
| 10 Ritt Staff | $ | 25,000 | 8-Apr |
| 10 Ritt Staff | $ | 25,000 | 22-Apr |
| Aetna-10 Ritt Staff March | $ | 2,534 | Invoiced |
| Aetna-10 Ritt Staff April | $ | 2,534 | Estimated |
| **Total** | $ | 80,068 | |

**CAMCO:**

| | | | |
|---|---|--:|---|
| Camco Payroll | $ | 9,603 | 15-Mar |
| Camco Payroll | $ | 9,603 | 31-Mar |
| Camco Payroll | $ | 9,603 | 15-Apr |
| Camco Payroll | $ | 9,603 | 30-Apr |
| Aetna-March | $ | 1,200 | Estimated |
| Aetna-April | $ | 1,200 | Estimated |
| Management Fee | $ | 5,000 | April |
| **Total** | $ | 45,811 | |

**Utilities:**

| | | | |
|---|---|--:|---|
| EMS - submetering | $ | 540 | Estimated |
| Hess (electric generation) | $ | 23,000 | Estimated |
| Hess | $ | 22,370 | Invoiced |
| Peco (electric distribution) | $ | 3,500 | Estimated |
| PGW | $ | 2,000 | Estimated |
| PGW - Acct #0590296218 | $ | 155 | Invoiced |
| PGW - Acct #0916051595 | $ | 1,734 | Invoiced |
| PGW - Acct #0916051595 | $ | 2,575 | Invoiced |
| Veolia | $ | 68,063 | Invoiced |
| Veolia (steam) | $ | 68,000 | Estimated |
| PECO | $ | 3,499 | Invoiced |
| PECO | $ | 24,408 | Invoiced |
| **Total** | $ | 219,845 | |

**Insurance:**

| | | | |
|---|---|--:|---|
| Afco | $ | 3,844 | Invoiced |
| Afco | $ | 3,844 | April Estimated |

Case 10-31201-sr   Doc 141   Filed 04/11/11   Entered 04/11/11 16:40:09   Desc Main
Document   Page 53 of 56

| Verizon - elevators | $ | 120 | April Estimated |
|---|---|---|---|
| Verizon - internet | $ | 65 | April Estimated |
| Verizon wireless | $ | 275 | April Estimated |
| **Total** | | | **$ 3,272** |

**Pool Maintenance:**

| Finkel & Davino | $ | 278 | Invoiced |
|---|---|---|---|
| Finkel & Davino | $ | 1,113 | Invoiced |
| Finkel & Davino | $ | 353 | Invoiced |
| Finkel & Davino | $ | 278 | Invoiced |
| QC Laboratories | $ | 120 | Invoiced |
| QC Laboratories | $ | 168 | Invoiced |
| Maint/Supplies | $ | 1,500 | April Estimated |
| **Total** | | | **$ 3,810** |

**Building Supplies & Maintenance:**

| Grainger | $ | 17 | Invoiced |
|---|---|---|---|
| Grainger | $ | 69 | Invoiced |
| Grainger | $ | 103 | Invoiced |
| Grainger | $ | 200 | Invoiced |
| Grainger | $ | 193 | Invoiced |
| Grainger | $ | 294 | Invoiced |
| John F. Scanlan | $ | 295 | Invoiced |
| PCA | $ | 252 | Invoiced |
| PCA | $ | 59 | Invoiced |
| PCA | $ | 21 | Invoiced |
| PCA | $ | 787 | Invoiced |
| PCA | $ | 43 | Invoiced |
| PCA | $ | 164 | Invoiced |
| PCA | $ | 42 | Invoiced |
| Closet Works | $ | 1,475 | Invoiced |
| Rumsey | $ | 119 | Invoiced |
| Rumsey | $ | 112 | Invoiced |
| Rumsey | $ | 177 | Invoiced |
| Rumsey | $ | 163 | Invoiced |
| Rumsey | $ | 177 | Invoiced |
| Rumsey | $ | 62 | Invoiced |
| Rumsey | $ | 211 | Invoiced |

| | | | |
|---|---|---:|---|
| Venturi | $ | 54 | Invoiced |
| Venturi | $ | 117 | Invoiced |
| Venturi | $ | 117 | Invoiced |
| Venturi | $ | 117 | Invoiced |
| Philadelphia Extract | $ | 84 | Invoiced |
| Philadelphia Extract | $ | 19 | Invoiced |
| Keytrak | $ | 155 | Invoiced |
| Dennis and Fredericks | $ | 795 | Invoiced |
| Set Rite | $ | 750 | Invoiced |
| Jenkintown Building Svcs (Biannual) | $ | 9,500 | April Estimated |
| **Total** | **$** | **18,064** | |
| | | | |
| **Building Mechanicals:** | | | |
| McMaster-Carr | $ | 176 | Invoiced |
| McMaster-Carr | $ | 121 | Invoiced |
| Johnson Controls | $ | 43 | Invoiced |
| Johnson Controls | $ | 576 | Invoiced |
| PHY | $ | 1,918 | Invoiced |
| Siemens | $ | 3,703 | Invoiced |
| Quality Elevator | $ | 4,644 | Invoiced |
| Quality Elevator | $ | 4,644 | April Estimated |
| Siemens | $ | 3,703 | April Estimated |
| **Total** | **$** | **19,527** | |
| | | | |
| **Auto:** | | | |
| Mercedes | $ | 1,525 | Invoiced |
| Linnett's Gulf | $ | 339 | Invoiced |
| Mercedes | $ | 1,525 | April pmt |
| Linett's Gulf | $ | 400 | April Estimated |
| **Total** | **$** | **3,789** | |
| | | | |
| **Other Supplies and Services:** | | | |
| WB Mason | $ | 237 | Invoiced |
| Plantarium | $ | 501 | Invoiced |
| Peachtree | $ | 16 | Invoiced |
| Net Data | $ | 358 | Invoiced |
| Comcast - 3rd Fl | $ | 183 | Invoiced |
| Comcast - Guest Suite | $ | 114 | Invoiced |

| | | |
|---|---|---|
| Savoy | $ 900 | April Estimated |
| Allied Waste | $ 1,466 | Invoiced |
| Allied Waste | $ 1,500 | April Estimated |
| Digitech Imaging | $ 583 | Invoiced |
| DSI | $ 444 | Invoiced |
| George Baker (Flowers) | $ 1,609 | Invoiced |
| George Baker (Flowers) | $ 680 | Invoiced |
| George Baker (Flowers) | $ 1,500 | April Estimated |
| CoolerSmart | $ 291 | Invoiced |
| Cort | $ 573 | Invoiced |
| Cort | $ 600 | April Estimated |
| Other office supplies | $ 500 | April Estimated |
| **Total** | **$ 14,983** | |
| **Parking:** | | |
| Phila Parking Authority | $ 100 | Invoiced |
| Park America | $ 13,365 | Invoiced |
| Park America | $ 14,000 | April Estimated |
| **Total** | **$ 27,465** | |
| **HOA Budget Total** | **$ 444,323** | |

**Carry Cost/Warranty:**

| | |
|---|---:|
| Labor (Plumb, Elec, Carp) | $ 21,000 |
| Appliances | $ 6,000 |
| Hardware | $ 3,000 |
| **Total** | $ 30,000 |